# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2779 | **DATE** | 10/25/2004 |
| **CASE TITLE** | Collins-Bey vs. Thomas | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment in part and denies it in part (30-1). Summary judgment is granted in favor of defendants Thomas Jones, and Hunter on plaintiff's claim under the Eighth Amendment; defendants' motion is otherwise denied. The Court will permit defendants to renew their request for summary judgment on the First Amendment and equal protection claims by filing a properly-supported motion, but only if they do so by no later than 11/23/04. Status hearing set to 11/30/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 39 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY COLLINS-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 2779 |
| ) | |
| JOHN W. THOMAS, SR., ALEX D. ) | |
| JONES, and DARRIN R. HUNTER, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
OCT 2 6 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gregory Collins-Bey, an inmate at Stateville Correctional Center, has filed a lawsuit alleging that prison officials violated his First Amendment right to free exercise of religion and his Fourteenth Amendment right to equal protection under the law, and that the officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him medical attention. The defendants who remain in this action, John Thomas Sr., Alex Jones, and Darrin Hunter, have moved for summary judgment. For the reasons stated below, the Court grants the motion as to Collins-Bey's Eighth Amendment claim but otherwise denies the motion.

### Facts

Collins-Bey was transferred from Menard Correctional Center to Stateville on April 3, 2002. At the time, Jones was an assistant warden at Stateville, and Thomas and Hunter were superintendents. Collins-Bey is a Moorish-American Muslim, whose religious beliefs prohibit him from cutting his hair, so he wears it in dreadlocks. After he transferred to Stateville, prison

39

officials asked Collins-Bey to cut his hair in accordance with the prison's grooming policy on three separate occasions. Each time, Collins-Bey signed a refusal based on his religious beliefs. Prison officials disciplined him for his refusal to comply with the grooming policy. Collins-Bey also alleges that he was denied medical treatment for his knee because he refused to cut his hair.

On September 4, 2002, prison officials cut Collins-Bey's hair. Collins-Bey asserts that this was done against his will. He also contends that other inmates wear their hair in similar hairstyles, including "dreadlocks, braids, extension braids, cornrow braids [and] weaves," but have not been required to cut their hair.

At the time of the forced haircut, the prison had in effect Illinois Department of Corrections Administrative Directive 05.03.160, which stated that "[p]ursuant to Department Rule 502.110, the Department may enforce an individual grooming policy for any offender whose hairstyle, including facial hair, presents a health, sanitation, or security risk." Def. Ex. C, § I.B. Also in effect at Stateville was Institutional Directive 05.03.160K3, which provided that "[a]n individual grooming policy may be imposed upon an inmate whose hairstyle and/or facial hair ... poses a security risk." Def. Ex. D, § II.A.3. This directive defined "security risk" associated with a hairstyle to include, among other things, a hairstyle that impedes or prevents correctional employees from conducting a thorough search for contraband, or that is of a volume or configuration that contraband might not be detected, or hidden contraband might injure an employee attempting a search. *Id.* § II.B.1-3. The directive permitted forcible cutting of an inmates' hair based on safety concerns: "If the inmate does not comply [after three verbal orders to remove his hairstyle], the [Duty Administrative Office] shall contact the warden who shall order that the hairstyle be forcibly removed." *Id.* § II.J.6. Finally, Warden's Bulletin # 02-60,

2

also in effect at Stateville at the time, stated that individual grooming policies can be imposed on inmates who have "hairstyles that create a risk that contraband hidden in the hair cannot be detected or that impede the searches for contraband or that pose a risk that contraband hidden in the hair may injure and [sic] employee seeking him." Def. Ex. G.

Stateville warden Kenneth Briley states in an affidavit that "hairstyles create a security risk when contraband hidden in the hair cannot be detected, when it impedes the searches for contraband, or when it poses a risk that contraband hidden in the hair may injure an employee searching him." Def. Ex. H. Collins-Bey claims that his hair did not pose a security threat. He points out that he had been at Stateville and other institutions for years, with the same hairstyle, without incident, and without any prior demand to cut his hair. Def. Ex. A (Collins-Bey deposition) at 38. Defendants have presented no evidence regarding the volume of Collins-Bey's hairstyle or whether it met any of the criteria set forth in the prison policies on which they rely. The only evidence they have submitted regarding Collins-Bey's hairstyle at the time of the forced cutting is his own testimony that he had not had a haircut for over twenty years and that his dreadlocks were shoulder length. Def. Ex. A at 39. Aside from this we have no information about the state of Collins-Bey's hair at the time. Finally, there is no indication from warden Briley's affidavit or any other evidence submitted by defendants that the warden or any other official determined pursuant to the previously referenced policies that Collins-Bey's hairstyle posed a security risk.

## Discussion

A Court may grant summary judgment only if "the pleadings, depositions, answers to interrogations, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must evaluate evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1.  **First Amendment / RLUIPA claim**

Even though Collins-Bey has made a claim under the First Amendment, because he is a *pro se* litigant, we construe his complaint liberally to encompass a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides greater protections to inmates than those under the First Amendment. If Collins-Bey cannot sustain a claim under RLUIPA, then *a fortiori* he cannot sustain a First Amendment claim. RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

a. **Substantial burden**

The defendants concede for purposes of the present motion that forcibly cutting Collins-Bey's hair placed a substantial burden on his ability to freely exercise his religion, so we proceed to discuss the remaining RLUIPA factors.

b.  **Compelling interest**

Ensuring safety within a prison is a compelling governmental interest. The Supreme Court has explained that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). *See also Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir. 1997); *Hamilton v. Schriro*, 74 F.3d 1545, 1552 (8th Cir. 1996). In *Diaz*, the plaintiff challenged prison regulations regarding hair length. *Diaz*, 114 F.3d at 69. The court upheld the dismissal of the plaintiff's lawsuit, applying the Religious Freedom Restoration Act (RFRA), a predecessor to RLUIPA. *Id.* at 71-73. The court concluded that "a prison regulation on hair length is related to security and, as such, involves a compelling state interest." *Id.* at 73. Likewise, in *Hamilton*, the court ruled that hair length regulations in a prison did not infringe the plaintiff's free exercise rights under the RFRA. *Hamilton*, 74 F.3d at 1547. The court acknowledged that prison safety is a compelling interest. *Id.* at 1552.

The Court concludes that prison safety is a compelling governmental interest that satisfies RLUIPA's requirements. Though *Diaz* and *Hamilton* analyzed the issue under RFRA, that statute used the same compelling interest standard that applies under RLUIPA. Collins-Bey has not contradicted warden Briley's statement that "[h]airstyles create a security risk when contraband hidden in the hair cannot be detected, when it impedes the searches for contraband, or when it poses a risk that contraband hidden in the hair may injure an employee searching him." Def. Ex. H.

5

#### c. Least restrictive means

Defendants have established that grooming regulations of the type at issue here provide the least restrictive means of addressing the interest of prison safety. Courts generally defer to prison authorities when evaluating policies related to prison safety. *Pell v. Procunier*, 417 U.S. 817, 827 (1974); *see Hamilton*, 74 F.3d at 1554 (giving the same deference in the context of a First Amendment challenge to a prison hair regulation). As best as we can determine, every Circuit to address the issue has held that regulations of inmate hair length satisfy the least restrictive means test. *See Diaz*, 114 F.3d at 73; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996); *Hamilton*, 74 F.3d at 1555. This Court finds those decisions persuasive.

One might argue that regular individual inspections of inmates with long hair would provide a less restrictive means of maintaining prison security than blanket grooming policies like those at issue in this case. Though such a policy would no doubt be less restrictive from the perspective of the inmates it affected, it would not adequately address the legitimate safety concerns of prison officials. Given the large number of inmates at prisons like Stateville, requiring individual searches would enable inmates to hide contraband or weapons in their hair in between inspections and thus would not adequately advance the goal of safety. Hair length and volume regulations like those at issue in this case are appropriately designed to take away such opportunities.

#### d. In furtherance

The discussion in the preceding sections would suffice to entitle the defendants to summary judgment on the RLUIPA claim if Collins-Bey were making a facial challenge to the regulations in question. But he is not; he claims that the policy was inappropriately applied to

6

him. As is clear from its text, RLUIPA requires the defendants to prove that the burden *on the particular person* "is in furtherance of a compelling governmental interest."

Defendants have offered insufficient evidence to establish as a matter of law that cutting Collins-Bey's hair furthered the compelling governmental interest in prison safety. As indicated above, we have been given precious little evidence regarding the state of Collins-Bey's hair at the time of the forced cutting. The fact that he had dreadlocks to his shoulders by itself does not give the Court sufficient information to determine on a summary judgment motion that application of Stateville's policies to him was in furtherance of prison safety.

Among other things, defendants, somewhat surprisingly, have offered no evidence regarding whether warden Briley (or anyone else) made the determination under the cited prison policies that Collins-Bey's hairstyle posed a security risk, or even that the defendants understood that they were carrying out those policies in cutting his hair. All that exists in this regard is Collins-Bey's statement that he was told by defendant Hunter on August 30, 2002 that his dreadlocks "posed a security problem." Compl. at 7; *see also* Def. Ex. A (Collins-Bey deposition) at 30. But the fact that Collins-Bey was told this does not make it so; to satisfy the "in furtherance" requirement, defendants must provide evidence that Collins-Bey's hairstyle was deemed to pose a security risk. The closest we have to this is a document that defendants did not reference in their summary judgment submissions – a finding by a grievance officer (not named as a defendant here) that indicates that "on 9/4/02 implementation of the Individual Grooming Policy was imposed on the grievant." This suggests that someone made a determination that Collins-Bey's hairstyle met the policy's requirements. But the grievance officer's unsworn finding – which defendants did not offer in support of their summary judgment motion in any

event – is hearsay and does not entitle the defendants to a finding, as a matter of law, that application of the policy to Collins-Bey furthered the prison's legitimate interest in safety. For this reason, defendants are not entitled to summary judgment on the merits of Collins-Bey's RLUIPA claim.

### e. Qualified immunity

Defendants also argue that they are entitled to qualified immunity from liability on the RLUIPA claim. Governmental officials performing discretionary functions are, as a general rule, shielded from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine in the context of a summary judgment motion whether qualified immunity exists, a court asks two questions: first, whether the facts, taken in the light most favorable to the plaintiff, show the defendants' conduct violated a constitutional right; and second, whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

In their summary judgment motion, defendants do not argue that the right that Collins-Bey claims was violated was not clearly established as of September 2004. Rather, their argument is that they did not violate the law – in essence, a rehash of their argument on the merits of the RLUIPA claim that the Court has already rejected. *See* Def. Mem. 12 ("under the facts of this case, the defendants could not possibly have been on notice that they violated any clearly established law because, in fact, per the authority cited in this motion, they have not violated any established law ...."). Defendants go on to make two claims that, as noted earlier, they have failed to support with any evidence: that they "were not interested in permanently

8

964 (7th Cir. 1988). Collins-Bey alleges that prison officials allowed other inmates to keep hair styles similar to his, such as dreadlocks, braids, and long hair and that he was singled out and treated differently based on his religion. Compl. at 7. As Collins-Bey points out, the defendants have failed to address the equal protection claim in their motion for summary judgment. For this reason, the claim survives, at least for now.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of defendants Thomas, Jones, and Hunter on plaintiff's claim under the Eighth Amendment. The Court will permit defendants to renew their request for summary judgment on the First Amendment and equal protection claims by filing a properly-supported motion, but only if they do so by no later than November 23, 2004. The case is set for a status hearing on November 30, 2004 at 9:30 a.m.


_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 25, 2004

denying Plaintiff from practicing his religion," and that they "were in the process of ensuring the safety of the Plaintiff and of Stateville Correctional Center." *Id.* These claims are unsupported in the record; defendants have offered no evidence at all regarding why they did what they did. Rather, the evidence they offered in support of summary judgment addresses only the facial validity of the policy. Again, the policy is without question facially valid, but that is not the issue presented by Collins-Bey's complaint. If the Court views the facts in the light most favorable to Collins-Bey, as we are required to do at this point, we cannot say as a matter of law that defendants acted for security reasons in forcibly cutting Collins-Bey's hair on September 4, 2002.

For these reasons, defendants have failed to show that they are entitled to summary judgment on the defense of qualified immunity.

**2. Eighth Amendment**

Collins-Bey claims that prison officials denied him medical treatment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. He directed this claim, however, against defendants other than Thomas, Jones, and Hunter who are no longer part of this case. Because there is no evidence that Thomas, Jones, or Hunter had anything to do with the alleged denial of medical care, they are entitled to summary judgment on that claim.

**3. Equal Protection**

Collins-Bey claims the defendants violated his Fourteenth Amendment right to equal protection by applying the grooming regulation to him but not to persons of other religions. Compl. at 6. When prison officials apply a grooming regulation differently in relation to different groups, it may violate the Equal Protection Clause. *Reed v. Faulkner*, 842 F.2d 960, 964 (7th Cir. 1988). Collins-Bey alleges that prison officials allowed other inmates to keep hair

styles similar to his, such as dreadlocks, braids, and long hair and that he was singled out and treated differently based on his religion. Compl. at 7. As Collins-Bey points out, the defendants have failed to address the equal protection claim in their motion for summary judgment. For this reason, the claim survives, at least for now.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment in part and denies it in part [docket # 30-1]. Summary judgment is granted in favor of defendants Thomas, Jones, and Hunter on plaintiff's claim under the Eighth Amendment; defendants' motion is otherwise denied. The Court will permit defendants to renew their request for summary judgment on the First Amendment and equal protection claims by filing a properly-supported motion, but only if they do so by no later than November 23, 2004. The case is set for a status hearing on November 30, 2004 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 25, 2004